IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| FLORENCE MUZI,<br><br>     Plaintiff,<br><br>  v.<br><br>NORTH AMERICAN VAN LINES, INC.,<br>CUSTARD INSURANCE ADJUSTERS,<br>INC.,<br><br>     Defendants. | **8:14CV267**<br><br>**MEMORANDUM AND ORDER** |

This matter is before the court on a motion to dismiss filed by defendants North American Van Lines, Inc. and Custard Insurance Adjusters, Inc., Filing No. 19.[1] This is an action for damages to property in connection with the moving of household goods. The plaintiff asserts a claim under the Carmack Amendment to the Interstate Commerce Act ("ICA"), 49 U.S.C. § 14706, and a state-law tort claim for bad faith refusal to settle in

---

[1] Also pending is the plaintiff's motion to strike the defendants' index or evidence, Filing No. 22. In support of their motion to dismiss, the defendants have submitted copies of a brochure entitled "Your Rights and Responsibilities When You Move," and the Bill of Lading, with authenticating declarations. Filing No. 21, Index of Evid., Ex. 1, Declaration of Tammy Angeloff; Ex. A, Brochure; Ex. 2, Declaration of Thomas Lambert ("Lambert Aff."), Ex. A, Bill of Lading. The plaintiffs move to strike the exhibits, contending that the documents are outside the pleadings and cannot be considered for purposes of a Fed. R. Civ. P. 12(b)(6) motion.

 "Though matters outside the pleading may not be considered in deciding a Rule 12 motion to dismiss, documents necessarily embraced by the complaint are not matters outside the pleading." *Gorog v. Best Buy Co.*, 760 F.3d 787, 791 (8th Cir. 2014); *Ashanti v. City of Golden Valley*, 666 F.3d 1148, 1151 (8th Cir. 2012). For example, "'[T]he contracts upon which [a] claim rests . . . are evidently embraced by the pleadings.'" *Id.* (quoting *Mattes v. ABC Plastics, Inc.*, 323 F.3d 695, 697 n. 4 (8th Cir. 2003)); *see also Stahl v. United States Dep't of Agric.*, 327 F.3d 697, 700 (8th Cir. 2003) ("In a case involving a contract, the court may examine the contract documents in deciding a motion to dismiss.").

 The court finds the plaintiff's motion to strike is well taken with respect to the brochure, however, the bill of lading is referred to in the complaint and essentially forms the gravamen of the plaintiff's Carmack Amendment claim. Importantly, the plaintiff does not challenge the accuracy or authenticity of the document. Accordingly, the court will consider the Bill of Lading in connection with the motion to dismiss. The brochure, on the other hand, is not embraced by the pleadings and the plaintiff's motion to strike will be sustained with respect to that document.

connection with a policy of insurance, seeking attorney fees under Neb. Rev. Stat. § 44-359.

The defendants move to dismiss the state-law claim for failure to state a claim under Fed. R. Civ. P. 12(b)(6).   They contend that the state-law claim is preempted by the Carmack Amendment.

I.      FACTS

In her amended complaint, the plaintiff alleges that she contracted with defendant North American Van Lines, Inc. ("North American") to transport her personal property from Alabama to Nebraska and also alleges she procured insurance of her property from North American and defendant Custard Insurance Adjusters, Inc. ("Custard")  for an additional payment.  She states that, pursuant to the Bill of Lading, the parties agreed the total value of the property being transported was $125,000.00.  She alleges her property was damaged by water and mold.  She also alleges that North American and Custard acted as insurers and entered into a contract with her wherein they agreed to insure the plaintiff's property and provide her an additional payment in the event of its loss.

The Bill of Lading includes a binding estimate that indicates, under "other services" an "insurance surcharge."  Filing No. 21-2, at ECF p.4 Index of Evid., Ex. 2, Lambert Decl., Ex. A, Bill of Lading.  Under the heading "protection options," in a box labelled "Warning," a maximum value protection of $125,000.00 is shown and the option with a $250.00 deductible is circled.  *Id.,* Ex. A, Bill of Lading at 5.  In addition, a page labelled "Customer Declaration of Value," shows the plaintiff's signature under both Option 1 for "Standard Full Value Protection" and Option 2 for "Waiver of Full Replacement Value Protection."  *Id.*, at 22.  The plaintiff's initials, however, are shown under Option 1, next to "$250 deductible" and the total value to be provided by the customer under Option 1 is handwritten as

2

$125,000. Initials are crossed out under Option 2. Also, the space labelled a monetary amount "to be provided by carrier" under Option 1 is not filled in.

II.   LAW

Under the Federal Rules, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The rules require a "'showing,' rather than a blanket assertion, of entitlement to relief." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 556 n.3. (2007) (quoting Fed. R. Civ. P. 8(a)(2)). "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Erickson v. Pardus, 551 U.S. 89, 93 (2007) (quoting Twombly, 550 U.S. at 555). In order to survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the plaintiff's obligation to provide the grounds for his entitlement to relief necessitates that the complaint contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555.

The factual allegations of a complaint are assumed true and construed in favor of the plaintiff. Id. "On the assumption that all the allegations in the complaint are true (even if doubtful in fact)," the allegations in the complaint must "raise a right to relief above the speculative level." Twombly, 550 U.S. at 555-56. In other words, the complaint must plead "enough facts to state a claim for relief that is plausible on its face." Id. at 547. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Determining whether a complaint states a plausible claim for relief is "a context-specific task" that requires the court "to draw on its judicial experience and common sense." Id. at 679.

3

A court considering a motion to dismiss may begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. *Id.* Although legal conclusions "can provide the framework of a complaint, they must be supported by factual allegations." *Id.* When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief. *Id.*

The Carmack Amendment to the ICA, 49 U.S.C. § 14706, regulates the liability of common carriers engaged in interstate commerce. *In re Atlas Van Lines, Inc.*, 209 F.3d 1064, 1066 (8th Cir. 2000); *see Adams Express Co. v. Croninger*, 226 U.S. 491, 503–05 (1913). The purpose of the Carmack Amendment is to establish a uniform federal guidelines designed in part to remove the uncertainty surrounding a carrier's liability when damage occurs to a shipper's interstate shipment. *Distribuidora Mari Jose, S.A. de C.V. v. Transmaritime, Inc.,* 738 F.3d 703, 706 (5th Cir. 2013). The Carmack Amendment preempts state law claims against interstate motor carriers and provides the exclusive cause of action for loss or damages to goods arising from interstate transportation. *Moffit v. Bekins Van Lines Co.*, 6 F.3d 305, 307 (5th Cir. 1993); *Fulton v. Chicago, Rock Island & Pac. R.R.*, 481 F.2d 326, 332 (8th Cir. 1973) (holding that where damages are sought against a motor carrier for failure to properly perform an interstate contract of carriage, the Carmack Amendment governs and preempts any state-law causes of action arising from or based on the carrier's performance of the interstate contract of carriage).

When a plaintiff alleges "liability on a ground that is separate and distinct from the loss of, or the damage to, the goods," however, the claim is not preempted. *Gordon v. United Van Lines, Inc.*, 130 F.3d 282, 289 (7th Cir. 1997) (noting that that "a number of situations" may exist "in which a carrier might remain liable to a shipper for certain kinds of

separate and independently actionable harms that are distinct from the loss of, or the damage to, the goods").  Similarly, a claim that does not arise from the same conduct as the claims for delay, loss or damage to shipped property will not be not preempted.  *Smith v. United Parcel Serv.*, 296 F.3d 1244, 1248-49 (11th Cir. 2002).[2]

"With the enactment in 1906 of the Carmack Amendment, Congress superseded diverse state laws with a nationally uniform policy governing interstate carriers' liability for property loss." *New York, N.H. & Hartford R.R. v. Nothnagle*, 346 U.S. 128, 131 (1953).  In substance, the Carmack Amendment provides that a carrier is strictly liable for the actual loss or injury to a shipper's property.  *See Continental Grain Co. v. Frank Seitzinger Storage, Inc.*, 837 F.2d 836, 839 (8th Cir. 1988).

The Carmack Amendment subjects motor carriers to absolute liability for "actual loss or injury to property" when transporting cargo in interstate commerce.  49 U.S.C. § 14706(a)(1).  A carrier's liability under the Carmack Amendment includes all reasonably foreseeable damages resulting from the breach of its contract of carriage, "including those

---

[2] *See, e.g., UPS Supply Chain Solutions, Inc. v. Megatrux Transp., Inc.*, 750 F.3d 1282 (11th Cir. 2014) (Carmack Amendment does not preempt carrier's contract action against subcarrier for indemnity for attorney's fees); *Gale v. Ramar Moving Systems, Inc.*, No. 13-cv-487, 2013 WL 3776983, *2-*3 (D. Md. 2013) (claims for damage to non-shipped goods and for damage to home during move were not preempted by Carmack Amendment); *Dynamic Transit v. Trans Pac. Ventures*, 291 P.3d 114, 117 (Nev. 2012) (Carmack Amendment does not preempt claim for intentional conversion of goods); *Mason and Dixon Intermodal, Inc. v. Lapmaster Int'l, LLC*, 632 F.3d 1056, 1061 (9th Cir. 2011) (Carmack Amendment did not preempt state laws governing partial settlement); *Frey v. Bekins Van Lines, Inc.*, 748 F. Supp. 2d 176, 181 (E.D.N.Y. 2010) (Carmack Amendment does not preempt claim regarding bait and switch pricing allegations); *Learning Links, Inc. v. United Parcel Serv. of America, Inc.*, No. 03-cv-7902, 2006 WL 785274, *4-*5 (S.D.N.Y. 2006) (Carmack Amendment did not preempt claim related to overcharges for shipments); *Buchanan v. Neighbors Van Lines*, No. 10-cv-6206, 2011 WL 5005769, *6-*7 (C.D. Cal. 2011) (Carmack Amendment does not preempt state law claims against a broker arising out of interstate transport of goods for fraud); *McGinn v. JB Hunt Transport, Inc.*, No. 10cv610, 2012 WL 124401, *3 (E.D. Wis. 2012) (Carmack Amendment does not preempt state law claims of person injured by falling cargo against shipper or carrier for improper loading and maintenance of load stability during transit); *In re EVIC Class Action Litigation*, No. MDL-1339, 2002 WL 1766554, *9-*10 (S.D.N.Y. 2002) (Carmack Amendment was "inapposite" to claims against defendant United Parcel Service, where those claims were not for "loss or damage to shipped goods," but for misuse of customers' payments for shippers' insurance); *Sokhos v. Mayflower Transit, Inc.,* 691 F. Supp. 1578, 1581 (D. Mass. 1988) (Carmack Amendment preempt only state law claims for lost to goods, but not state law claims of deceptive practices).

resulting from nondelivery of the shipped goods as provided by the bill of lading." *Air Prods. & Chems., Inc. v. Illinois Cent. Gulf R.R. Co.*, 721 F.2d 483, 485 (5th Cir. 1983); *see National Hispanic Circus, Inc. v. Rex Trucking, Inc.*, 414 F.3d 546, 549 (5th Cir. 2005) (noting that both general and special damages may be recovered under the Carmack Amendment); *Paper Magic Group, Inc. v. J.B. Hunt Transp., Inc.*, 318 F.3d 458, 461–62 (3d Cir. 2003) (finding loss in value due to delay a reasonably foreseeable component of general damages); *Contempo Metal Furniture Co. v. East Texas Motor Freight Lines, Inc.*, 661 F.2d 761, 765 (9th Cir. 1981) (stating that "[t]he Carmack Amendment has not altered the common law rule that special or consequential, damages, i.e., those that the carrier did not have reason to foresee as ordinary, natural consequences of a breach when the contract was made, are not usually recoverable in an action for breach of contract"). Accordingly, recovery of consequential damages under the Carmack Amendment is allowed when a plaintiff can show that the carrier had notice of the special circumstances from which such damages would flow.  *See, e.g., Contempo,* 661 F.2d at 765 (allowing damages for delay); *Hector Martinez & Co. v. Southern Pac. Transp. Co.,* 606 F.2d 106, 111 (5th Cir. 1979) (allowing claim for damages resulting from delay); *John Morrell & Co. v. Burlington N., Inc.,* 560 F.2d 277, 281 (7th Cir. 1977) (stating that to recover special damages, a plaintiff must show that the defendant had notice of circumstances that might lead to such damages); *Pillsbury Co. v. Illinois Cent. Gulf R.R.*, 687 F.2d 241, 245 (8th Cir. 1982) (allowing recovery of demurrage charges when fumigation effort slowed the unloading of backed-up cars); *Mach Mold Inc. v. Clover Assocs., Inc.,* 383 F. Supp. 2d 1015, 1032 (N.D. Ill. 2005) (stating that an injured party can recover damages for delay, non-speculative lost profits, and all reasonably foreseeable consequential damages).  The foreseeability of

consequential damages is a question of fact.  *See National Hispanic Circus,* 414 F.3d at 550.

A carrier can, however, limit its liability if it takes certain steps, including giving the shipper a reasonable opportunity to choose between two or more levels of liability, obtaining the shipper's agreement as to the choice of liability, and issuing a receipt or bill of lading prior to moving the shipment. *Emerson Elec. Supply Co. v. Estes Express Lines Corp.*, 451 F.3d 179, 188 (3d Cir. 2006) (noting that amendments to the ICA did not alter the requirement that a carrier provide a shipper with a reasonable opportunity to choose between two or more levels of liability).  To satisfy the two or more levels of liability requirement, a carrier must offer two or more shipping rates with corresponding levels of liability for one type of shipment.  *See Nothangle*, 346 U.S. 128, 134, (1953) ("[O]nly by granting its customers a fair opportunity to choose between higher or lower liability by paying a correspondingly greater or lesser charge can a carrier lawfully limit recovery to an amount less than the actual loss sustained.").   "A reasonable opportunity to choose between different levels of coverage 'means that the shipper had both reasonable notice of the liability limitation and the opportunity to obtain information necessary to making a deliberate and well-informed choice.'" *Carmana Designs Ltd. v. North Am. Van Lines Inc.*, 943 F.2d 316, 320 (3d Cir. 1991) (quoting *Bio-Lab, Inc. v. Pony Express Courier Corp.,* 911 F.2d 1580, 1583 (11th Cir. 1990).

Household goods carriers are governed by additional statutes and regulations.  *See* 49 U.S.C. §§ 13704(a)(2) & 14104; *Munitions Carriers Conference, Inc. v. United States,* 147 F.3d 1027, 1029 (D.C. Cir. 1998) (noting, post-deregulation, that carriers are no longer required to file tariffs for the transportation of most goods, but must still file tariffs for the transportation of household goods).  *Id.* The Federal Motor Carrier Safety Administration

(FMCSA) regulates interstate household moves under the authority of the Safe, Accountable, Flexible, Efficient Transportation Equity Act:  A Legacy for Users (SAFETEA-LU), which Congress passed in 2005.  *See* Public Law 109-59, 119 Stat. 1144 (Aug. 10, 2005), *codified at* 49 U.S.C. §§ 13102-14104.  With respect to household goods, the ICA provides:

> (f) Limiting liability of household goods carriers to declared value.—
>
>> (1) In general.--A carrier or group of carriers subject to jurisdiction under subchapter I or III of chapter 135 may petition the Board to modify, eliminate, or establish rates for the transportation of household goods under which the liability of the carrier for that property is limited to a value established by written declaration of the shipper or by a written agreement.
>>
>> (2) Full value protection obligation.--Unless the carrier receives a waiver in writing under paragraph (3), a carrier's maximum liability for household goods that are lost, damaged, destroyed, or otherwise not delivered to the final destination is an amount equal to the replacement value of such goods, subject to a maximum amount equal to the declared value of the shipment and to rules issued by the Surface Transportation Board and applicable tariffs.
>>
>> (3) Application of rates.--The released rates established by the Board under paragraph (1) (commonly known as "released rates") shall not apply to the transportation of household goods by a carrier unless the liability of the carrier for the full value of such household goods under paragraph (2) is waived, in writing, by the shipper.[3]

---

[3]  Under 49 U.S.C. § 14706(f)(3), the Board authorizes household goods carriers to set "released rates," which are lower rates for transportation services when the shipper agrees to release the carrier from full liability for potential loss and damage to the shipper's cargo.  See *Transportation of Household Goods in Interstate Commerce; Consumer Protection Regulations: Released Rates of Motor Carriers of Household Goods*, 77 Fed. Reg. 25371-01 (April 30, 2012).  In the regulations, the Federal Motor Carrier Safety Administration Transportation Board explains:

> Unless otherwise agreed to, a moving company is liable for the cost to replace lost or damaged goods, up to a total value stated by the consumer.  For instance, if the consumer stated that the shipment had a value of $200,000, and the entire shipment were destroyed, the moving company would be liable for a $200,000. However, if a consumer does not indicate a total value for the shipment, the Board's decision would require the moving company to be liable for the greater of (1) $6,000 or (2) $6.00 per pound of the lost or destroyed item(s).

*Released Rates of Motor Common Carriers of Household Goods*, 76 Fed. Reg. 5431-01 (Jan. 31, 2011).

49 U.S.C.A. § 14706(f)(1)-(3).   There are currently two generally applicable liability options for interstate household goods moves:   the first reimburses the shipper for the replacement value of his or her goods, referred to as the full value option; and the second reimburses the shipper at a lower rate, currently 60 cents per pound, and is referred to as the released rate option.   See *Transportation of Household Goods in Interstate Commerce; Consumer Protection Regulations: Released Rates of Motor Carriers of Household Goods*, 77 Fed. Reg. 25371-01, 25373 (April 30, 2012).

Carriers of household goods may offer to sell or obtain for a shipper separate liability insurance when the individual shipper releases the shipment for transportation at a value not exceeding 60 cents per pound ($1.32 per kilogram) per article.   See 49 C.F.R. § 375.301; § 375.303(a).   If the carrier sells, offers to sell, or procures liability insurance coverage for loss or damage to shipments, it must; (1) issue to the individual shipper a policy or other appropriate evidence of the insurance that the individual shipper purchased; (2) provide a copy of the policy or other appropriate evidence to the individual shipper at the time it sells or procures the insurance; (3) issue policies written in plain English; (4) clearly specify the nature and extent of coverage under the policy.   *Id.,* § 375.303(c)(1)-(4).   If the carrier sells or procures insurance, the carrier's failure to issue a policy, or other appropriate evidence of insurance purchased, to an individual shipper will subject the carrier to full liability for any claims to recover loss or damage attributed to the carrier.   *Id.,* § 375.303(c)(5).   Separate liability insurance from a third-party insurance company "is not valuation coverage governed by Federal law, but optional insurance regulated under State law." *Transportation of Household Goods; Consumer Protection Regulations*, 69 Fed. Reg. 10570-01, 105-79-80 (Mar. 5, 2004); *see also* William J. Augello and George Carl Pezold,

<u>Freight Claims in Plain English</u>, Vol. I, § 8.8.20 (4th ed. 2008) (confirming that an offer to purchase third-party insurance does not qualify as an alternative choice of rates under the Carmack Amendment); *Nipponkoa Ins. Co. v. Atlas Van Lines, Inc.*, 687 F.3d 780, 782 (7th Cir. 2012) (noting that, in the transportation trade, insurance and rates have not been treated as economic equivalents).

III.    DISCUSSION

At this stage of the proceedings, the court is unable to determine whether the plaintiff purchased a separate policy of insurance.  She alleges that she did.  The Bill of Lading supports that allegation to some extent because it includes an "insurance surcharge."  The court is unable to determine the meaning or relevance of that notation in this context. Nothing in the record clarifies whether the imposition of an insurance surcharge incorporates either an additional rate or insurance or both.  Further, it is not clear on the face of the complaint or in the Bill of Lading whether the carrier would have issued or procured the policy or whether a third-party insurer is involved.  In addition, the Bill of Lading appears to be inconsistent with respect to the valuation and/or agreed level of liability.  Under the circumstances, further development of the record is necessary to determine the issues that relate to Carmack Amendment preemption.

Depending on the evidence, the plaintiff may be able to pursue a state law tort claim with respect to a separate contract of insurance that is governed under state law. Arguably, her bad faith claim is not based on the defendants' conduct in transporting the household goods, but arises under obligations separate and apart from the loss or damage to the goods.  Accordingly, the court finds the defendants' motion to dismiss the state-law claim should be denied at this time, without prejudice to reassertion on further development of the record.

IT IS ORDERED:

1.      The defendants' motion to dismiss (Filing No. 19) is denied.

2.      The plaintiff's motion to strike the defendants' index (Filing No. 22) is granted

in part and denied in part, as set forth in this order.

DATED this 18th day of March, 2015

BY THE COURT:

s/ Joseph F. Bataillon
Senior United States District Judge